IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| KENNETH A. WHITE,<br><br>Plaintiff,<br><br>vs.<br><br>ALLSTATE INSURANCE CO., ET AL.,<br><br>Defendants. | CASE NO. 5:22-CV-00604-SL<br><br>JUDGE SARA LIOI<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>ORDER |

Pursuant to the District Court's order of June 1, 2022 (ECF Doc. 7), this matter has been referred to the undersigned for pretrial management and resolution of all non-dispositive motions. Before the Court are Plaintiff Kenneth White's Motion for Leave to File a Second Amended Revised Complaint (ECF Doc. 42 ("Motion to Amend")) and Motion to Clarify and State Clear Facts (ECF Doc. 39 ("Motion to Clarify")). Defendants filed a response to the Motion to Clarify on October 11, 2022 (ECF Doc. 44) and a brief in opposition to the Motion to Amend on October 25, 2022 (ECF Doc. 48). Mr. White filed a supplement to his Motion to Amend on October 13, 2022 (ECF Doc. 46) and a reply in support of the Motion to Amend on November 8, 2022 (ECF Doc. 49).

For the reasons set forth in further detail below, the undersigned GRANTS Mr. White's Motions to Amend and Clarify. The undersigned also GRANTS Mr. White's request to strike Claim I (Conflict of Interest under 29 U.S.C. § 1132(a)(1)(B)). (ECF Doc. 49, pp. 3-4.) The revisions in the document titled "Second Amended Complaint" (ECF Doc. 46-1) are deemed

1

incorporated by interlineation into the Amended Complaint (ECF Doc. 42-1), with the exception of Claim I, which is stricken from the Amended Complaint on Mr. White's request.

## I. Procedural History

On April 14, 2022, *pro se* Plaintiff Kenneth White filed a complaint against Allstate Insurance Company ("Allstate"), Gary Hutchins ("Mr. Hutchins"), and Lincoln Benefit Life Company ("Lincoln Benefit"). (ECF Doc. 1 ("Complaint").) Lincoln Benefit filed its Answer to the Complaint on May 31, 2022. (ECF Doc. 6.) A Case Management Conference Order ("CMC Order") was issued on August 17, 2022. (ECF Doc. 26.) As jointly requested by Mr. White and Lincoln Benefit, the deadline to file a motion seeking to add parties or amend pleadings was set for September 15, 2022. (ECF Doc. 23, p. 2; ECF Doc. 26, p. 1.)

On August 22, 2022, defendants Gary Hutchins and Allstate filed a joint motion to dismiss for failure to state a claim. (ECF Doc. 31.) Mr. White filed a response on September 13, 2022, arguing that Allstate's motion should be denied but agreeing that Mr. Hutchins should be dismissed as a defendant. (ECF Doc. 36.)

On September 13, 2022, Mr. White filed an amended complaint which asserted continued claims against defendants Allstate and Lincoln Benefit, removed Mr. Hutchins as a defendant, and asserted claims against the following additional defendants: (1) Thomas Wilson, in his individual and business capacity as CEO of Allstate; (2) Allstate Life Insurance Co. (now known as Everlake Life Ins.); (3) CEO of Allstate Life Insurance / Everlake Life Insurance; (4) Norman Ingrassa, in his personal and professional capacity as an Allstate Insurance Agent; and (5) CEO of Lincoln Benefit in his personal and professional capacity. (ECF Doc. 35.) On October 14, 2022, the Court struck the amended complaint because it was not filed in compliance with

Federal Rule of Civil Procedure 15, and specifically because Mr. White failed to seek leave of Court under Rule 15(a)(2). (Non-document entry of Oct. 14, 2022.)

On September 26, 2022, Mr. White filed his Motion to Clarify, seeking to correct certain docket entries. (ECF Doc. 39.) Defendants filed a response to the Motion to Clarify on October 11, 2022, indicating that they did not fully understand the nature of the motion and the status of Mr. White's requests for relief. (ECF Doc. 44.)

Mr. White filed the present Motion to Amend on October 11, 2022, attaching the proposed Amended Complaint at issue herein. (ECF Docs. 42, 42-1 ("Amended Complaint")[1].) On October 13, 2022, Mr. White requested that a modified version of the proposed Amended Complaint be added to the docket. (ECF Docs. 46, 46-1.) The modified version added to the left margin of the Amended Complaint references to the specific legal claims addressed in each paragraph. (*Compare* Amended Complaint *with* ECF Doc. 46-1.) Defendants filed a brief in opposition on October 25, 2022. (ECF Doc. 48.) Mr. White filed reply brief in support on November 8, 2022. (ECF Doc. 49.) The Motion to Amend is now ripe for resolution.

## II. Motion for Leave to File Amended Complaint

**A.   Allegations of Amended Complaint**

The proposed Amended Complaint seeks to assert continued claims against defendants Allstate and Lincoln Benefit and add claims against the following new defendants: (1) Thomas Wilson (individual and business capacity), CEO of Allstate; (2) Allstate Life Insurance Co. (now known as Everlake Life Ins.); (3) Allstate Life Insurance Co. CEO (Everlake Life Insurance); (4) Lincoln Benefit CEO (individual and business capacity); (5) Allstate Insurance Agent Robert M.

---

[1] Although the pleading is captioned as Mr. White's "Second Amended Complaint," it is referred to herein as the "Amended Complaint" for the sake of clarity and simplicity, given that the prior amended complaint was stricken.

Malbasa (Financial Specialist) (individual and business capacity); (6) Allstate Insurance Co. Agent Ranice Westerfield, Multi-Line Agent. (Amended Complaint, pp. 7-9.)[2]

The list of legal claims outlined in the Amended Complaint is similar to the list contained in the original Complaint, but with added references to certain federal statutes and the addition of one legal claim. Specifically, the Amended Complaint asserts claims for: (A) Misappropriation of Funds; (B) Breach of Contract, 15 U.S.C. § 80a-1(b); (C) Breach of Fiduciary Duties 15 U.S.C. § 80a-35; (D) Agency Fraud; (E) Negligent Misrepresentation; (F) Conversion; (G) Punitive Damages; (H) Dissociation of a Partner; and (I) Conflict of Interest, 29 U.S.C. § 1132(a)(1)(B). The references to federal statutes in claims B and C were not contained in the original Complaint; similarly, the claim of conflict of interest in Claim I was not asserted in the Complaint. (*Compare* Complaint, p. 12 *with* Amended Complaint, p. 11.) In his reply brief, Mr. White requested that Claim I be stricken (ECF Doc. 49, pp. 3-4, ¶6.), a request that the undersigned grants herein.

Although the causes of action listed in the Complaint and Amended Complaint are similar, the underlying factual allegations are distinct. The Complaint alleges Defendants failed to notify Mr. White that his "Life Insurance / Investment Policy" had been surrendered or lapsed, failed to give him an opportunity to stop the lapse, and failed to communicate with him regarding the policy status and what he must do to remain in good standing. (Complaint pp. 7-8, ¶¶ 1-2, 6-8.) It alleges that Defendants led him to believe the policy was intact because they did not notify him of the impending lapse. (*Id.* at p. 9, ¶ 9.) It also alleges he was defrauded of his financial security, intentionally or negligently, in violation of the anti-fraud provisions of the SEC (*id.* at

---

[2] For efficiency, the citations to the Amended Complaint will reference the proposed pleading attached to the Motion to Amend, which includes attached exhibits (ECF Doc. 42-1), rather than the revised version filed with certain annotations but without exhibits on October 13, 2022 (ECF Doc. 46-1). It is noted that both proposed Amended Complaints contain the same substantive allegations and are subject to the same analysis.

pp. 9-10, ¶¶ 10, 14), and that Defendants failed, refused, or neglected to fulfill their duties as trusted financial investors and their contractual agreements (*id.* at ¶ 12). It further alleges that Defendants did not uphold their contractual and fiduciary duties to inform Mr. White as to what his money was invested in, whether there was a profit or loss, and the amount of his "vested equity." (*Id.* at pp. 9-11, ¶¶ 11, 15-16, 21.) Thus, the Complaint generally asserts claims based on Defendants' failure to communicate with Mr. White regarding the status of his life insurance policies, including their impending lapse and what he must do to prevent that lapse.

In the Amended Complaint, in contrast, Mr. White seeks to add specific allegations that Allstate agents (and newly named defendants) Robert M. Malbasa and Ranice Westerfield "set out to intentionally defraud" Mr. White and convert his life insurance policies to their benefit. (Amended Complaint, pp. 13-15, 18, ¶¶ 4, 5, 9, 15.) Specifically, Mr. White alleges Ms. Westerfield (then his newly separated wife) altered his life insurance policies without permission in 2009, removing his children as beneficiaries and listing herself as the sole beneficiary. (*Id.* at p. 9, § I.) He also alleges that she listed herself as an agent on those documents, despite the conflict of interest inherent to serving as an agent and a beneficiary, and even though she was not authorized to write life insurance policies at that time. (*Id.*) He alleges that Mr. Malbasa was her supervising agent, failed to protect Mr. White from Ms. Westerfield's fraudulent actions, and "turn[ed] a willful blind eye" because he was receiving an 85% to 15% split on the commission. (*Id.* at pp. 9-10, 15, § I, ¶ 7.) Mr. White also alleges that he did not learn of these fraudulent actions until he received discovery from Defendants after September 15, 2022. (*Id.* at p. 10, § I.)

In support of these new factual allegations, Mr. White attaches paperwork regarding the initiation of his Lincoln Benefit Life Insurance policies in 2005, which name his four children as beneficiaries. (*Id.* at pp. 25-50 (Ex. A), 95-103 (Ex. F), 117-27 (Ex. H).) He also attaches

5

"Contract Change" paperwork apparently submitted by Mr. Malbasa to the Term Conversion Department at Lincoln Benefit Life Company on September 28, 2009. (*Id.* at pp. 63-97 (Ex. E).) This paperwork requests that all prior beneficiary designations be cancelled and lists "Ranice Westerfield-White" as both Mr. White's spouse and the primary beneficiary with a 100% share. (*Id.* at p. 65.) The paperwork also lists Mr. Malbasa as the "Writing Agent" and Ms. Westerfield as the "Partner Agent," and contains an "Agent Report" with boxes checked to answer "no" to the following questions: "Is the Proposed Insured related to you?" and "Are there any Proposed Insureds you did not see when you took the application?" (*Id.* at pp. 69-70.)

Mr. White alleges that he did not give Ms. Westerfield permission to change the beneficiary designations in his policies, and did not sign the "Contract Change" paperwork; instead, he alleges that paperwork is "100% forged and fraudulent." (*Id.* at pp. 9-12, § I, ¶ 2; *see also id.* at pp. 80, 83, 85-86, 88-89 (allegedly fraudulent signatures).) He also alleges that a handwritten letter in his name requesting a copy of his policy statement from Lincoln Benefit in 2011 was forged. (*Id.* at p. 14, ¶ 5; *see also id.* at p. 105 (11/29/11 letter).) He notes that the letter was written when he was in prison and lists a return address for a property that he owned, but where he never lived; instead, he alleges Ms. Westerfield lived at that residence during the separation before their divorce. (*Id.*) Mr. White alleges the "fake policy with false information, forged signatures, conflicts of interest inherent (both writer and beneficiary), [and] false addresses" led to the lapse of his policies and the nonpayment of his premiums, and also prevented him from receiving correspondence regarding his policies. (*Id.* at pp. 13-14, ¶¶ 4-5.)

In addition to alleging intentional fraud by Ms. Westerfield and Mr. Malbasa, the Amended Complaint makes the following allegations against existing corporate defendants Allstate and Lincoln Benefit, new corporate defendant Allstate Life Insurance Co., and the CEOs

6

of the three entities: Ms. Westerfield "was an agent of" Allstate and acted "under authority and at the behest of" all three entities (*id.* at p. 11, § 1); Ms. Westerfield "conspired with her superiors" at all three entities and Mr. Malbasa "to convert Plaintiff's policy without his authorization" (*id.* at p. 13, ¶ 4); all defendants "turned a willful blind eye" to Ms. Westerfield's activities (*id.* at p. 14, ¶ 5); the corporate entities and CEO did not properly supervise Ms. Westerfield and Mr. Malbasa and did not have security measures in place to prevent their fraud (*id.* at p. 15, ¶ 8); the corporate entities and Mr. Malbasa engaged in an "unacceptable business practice" and made a "major oversight" when they did not require Ms. Westerfield "to have a witness to the conversion of a $350,000.00 life insurance policy" (*id.* at p. 15, ¶ 9); the entities and CEOs were negligent, failed to properly vet and train their agents, failed to enforce oversight authority, refused to regulate their agents, and failed to protect Mr. White from the fraudulent schemes of Ms. Westerfield and Mr. Malbasa (*id.* at pp. 16, 18, ¶¶ 12, 15); and Lincoln Benefit and its CEO "participated in the purposeful defrauding of" Mr. White by allowing Ms. Westerfield to "serve as Plaintiff's writing agent and beneficiary," to change Mr. White's mailing address, and to forge the policy (*id.* at p. 19, ¶ 17).

**B.    Law and Analysis**

Federal Rule of Civil Procedure 15 permits a party to amend its pleading once as a matter of course within 21 days of service. *See* Fed. R. Civ. P. 15(a)(1)(A). After that time has passed, the party may amend his pleading only with the written consent of the opposing party or the court's leave. *See* Fed. R. Civ. P. 15(a)(2). Here, the Complaint was filed on April 14, 2022, meaning that the deadline for Mr. White to file an Amended Complaint as a matter of course

7

expired on May 5, 2022. Since Defendants have not consented to the amendment of the complaint, Mr. White may now only file the Amended Complaint with leave of court.

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires." When deciding whether to grant leave to amend a complaint, this Court must consider whether there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," among other considerations. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Further, once the deadline to amend set by the case management order has passed, a plaintiff must first "show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). "The primary measure of Rule 16s 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Andretti v. Borla Perf. Indus.*, Inc. 426 F.3d 824, 830 (6th Cir. 2005) (quotation omitted); *see also Leary*, 349 F.3d at 906 ("[G]ood cause is measured by the movant's diligence in attempting to meet the case management order's requirements.").

**1.      Good Cause, Undue Delay, and Unfair Prejudice**

Defendants argue that amendment of the pleadings to name new parties and set forth new factual allegations would delay the litigation and prejudice them. (ECF Doc. 48, pp. 5-6.) They note that the instant motion was filed after the deadline in the Case Management Conference Order, and argue that leave to amend would result in delayed adjudication of the case. (*Id.* at p. 6.) Mr. White responds that his initial attempt to amend the Complaint was timely filed on

8

September 13, 2022 (ECF Doc. 35) and argues that he is seeking to amend based on information revealed in discovery, not in an attempt to prejudice Defendants. (ECF Doc. 49, p. 3.)

The Case Management Conference Order did establish a deadline of September 15, 2022 for Mr. White to file a motion for leave to amend the Complaint or add new parties. (ECF Doc. 26, p. 1.) Mr. White did not seek leave to file an amended pleading by that deadline. However, he did attempt to file an amended complaint <u>without</u> leave of court before the deadline, on September 13, 2022. (ECF Doc. 35.) That pleading was stricken as noncompliant with Rule 15 on October 14, 2022. (Non-document entry of Oct. 14, 2022.) The undersigned did not permit Mr. White to supplement his September 13, 2022 filing with a request for leave to amend because he had already filed the instant Motion to Amend by that time, which sought leave to file the Amended Complaint presently before the Court. (ECF Doc. 42.)

The stricken amended complaint sought to name the same three corporate entities and CEOs that are named in the instant proposed Amended Complaint. (ECF Docs. 35, 42-1.) However, that earlier pleading did not seek to add Ms. Westerfield or Mr. Malbasa as defendants, and likewise did not seek to add factual allegations relating to their alleged intentionally fraudulent actions. (ECF Doc. 35.) Mr. White explains that the documents informing these new factual allegations were not provided to him in discovery until after the September 15, 2022 deadline. (ECF Doc. 42, pp. 1-2.)

In light of Mr. White's attempt – albeit procedurally flawed – to timely file an amended complaint adding the new corporate entities and CEOs prior to the expiration of the deadline (ECF Doc. 35), and his prompt filing of the present motion once he became aware of the factual underpinnings of his additional claims against Ms. Westerfield and Mr. Malbasa (ECF Doc. 42,

9

42-1), the undersigned finds Mr. White has established good cause for his failure to file the present Motion to Amend prior to the September 15, 2022 filing deadline.

For similar reasons, the undersigned finds that Defendants have not shown that consideration of the present motion on its merits will cause "undue delay" or "undue prejudice to the opposing party." *Foman*, 371 U.S. at 182. The delay at issue was less than one month long, occurred relatively early in the lifetime of the case, and took place under circumstances suggesting that Mr. White acted diligently despite his incarceration, his *pro se* status, and his lack of electronic access to the docket.

Although Defendants have not articulated specific arguments regarding the prejudice they may suffer as a result of delay, it is observed that the discovery period and deadline to file dispositive motions have passed since Mr. White's Motion to Amend was submitted in October 2022. It is further observed that the addition of new parties to the case will likely cause further delays, as new defendants are served, and that discovery and dispositive motion practice may need to be reopened in the event that new defendants appear in the case. Nevertheless, the undersigned does not find that "undue prejudice" will result. The record reflects that this case was filed only nine months ago, that Mr. White has acted diligently in prosecuting the action, and that adjustments to the case management schedule can address any potential prejudice.

For the reasons stated, the undersigned finds Defendants have failed to show that the filing of the Amended Complaint will cause undue delay or undue prejudice.

  **2.**  **Whether Amendments Would Be Futile**

Defendants also argue that Mr. White's Motion to Amend should be denied because his proposed amendments are futile, namely: (1) the allegations are insufficient to state a claim for liability against the new corporate executive defendants; (2) the allegations are "incoherent,

10

conclusory, and implausible," do not provide fair notice for the bases of Mr. White's claims, and do not suggest plausible claims against the proposed new defendants; and (3) the claims are time-barred because they allege wrongful conduct occurring at least ten years ago, in 2012. (ECF Doc. 48, pp. 6-9.) Mr. White asserts that his claims are not futile or time-barred because he only became aware of the issue with his life insurance policy in 2021, and the right to prosecute therefore began at that time. (ECF Doc. 49, p. 2.)

Although courts are encouraged to give leave to amend "when justice so requires," Fed.R.Civ.P. 15(a)(2), it is recognized that a court "need not give leave to amend when doing so would be futile." *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014); *see also Foman*, 371 U.S. at 182. As a general matter, amendment is considered to be futile if the proposed amended complaint would not survive a motion to dismiss or a motion for judgment on the pleadings. *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotes and marks omitted). This Court must accept all well-pleaded material allegations contained in the complaint as true, and view the complaint in the light most favorable to the plaintiff. *See Papasan v. Allain*, 478 U.S. 265, 283 (1986). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 285.

Only if a complaint states a plausible claim for relief will it survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Twombly*, 550 U.S. at 556. Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim for relief that is

11

plausible on its face." *Twombly*, 550 U.S. at 569. A complaint must provide grounds for entitlement to relief more than mere labels and conclusions; "a formulaic recitation of a cause of action's elements will not do." *Id.* at 555. The notice pleading standard "does not require detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (internal quotations omitted).

When reviewing a pleading under a motion to dismiss standard, the court primarily considers the allegations contained in the complaint, but it may also take into account matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

As a *pro se* plaintiff, Mr. White's pleadings are to be "liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Further, Federal Rule of Civil Procedure 8(e) instructs that "pleadings must be construed so as to do justice." Nevertheless, Mr. White remains bound by applicable rules of practice and procedure. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

### (i) Whether Amended Complaint States Claims Against CEOs

Defendants argue generally that the allegations in the Amended Complaint are insufficient to state a claim for relief against the corporate executive defendants because "[n]one of the corporate executives have had (or are even alleged to have had) any involvement in the issuance, administration, or termination of the subject policies." (ECF Doc. 48, p. 7.) However, they do not cite to any law in support of this argument and do not provide any specific arguments as to the elements of the various causes of action identified in the *pro se* Amended Complaint.

12

It is true that Mr. White does not allege facts suggesting that any corporate executive defendant had specific knowledge of, or involvement with, the insurance policies or fraudulent actions referenced in the Amended Complaint. Instead, he alleges that: Ms. Westerfield "conspired with her superiors . . . to convert Plaintiff's policy without his authorization" (ECF Doc. 42-1, p. 13, ¶ 4); the CEOs "turned a willful blind eye" to Ms. Westerfield's activities (*id.* at p. 14, ¶ 5); they did not properly supervise Ms. Westerfield or Mr. Malbasa, and did not have proper security measures in place (*id.* at p. 15, ¶ 8); they were negligent, failed to properly vet and train their agents, failed to enforce oversight authority, refused to regulate their agents, and failed to protect Mr. White from the fraudulent schemes of Mr. Westerfield and Mr. Malbasa (*id.* at pp. 16, 18, ¶¶ 12, 15); and that Lincoln Benefit's CEO "allow[ed]" Ms. Westerfield to serve as Mr. White's agent and a beneficiary, to change Mr. White's mailing address, and to forge his policy (*id.* at p. 19, ¶ 17).

Although Defendants have generally asserted that the allegations in the Amended Complaint fail to meet notice pleading standards, they have not offered any legal authority to support a finding that the allegations in the Amended Complaint are insufficient to state a claim against any of the three CEOs, in their individual or official capacities, in the context of a variety of claims that include misappropriation of funds, breach of contract, breach of fiduciary duty, agency fraud, negligent misrepresentation, or conversion. The Sixth Circuit has long held that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). This is because "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson*, 125 F.3d at 995–96.

13

Further, courts have recognized the "conceptual difficulty" presented when a magistrate judge who has jurisdiction to decide only non-dispositive motions is asked to deny a motion for leave to amend on the basis of "futility," i.e., legal insufficiency under a Rule 12(b)(6) standard. *Durthaler v. Accounts Receivable Mngmt., Inc.*, 2:10-cv-1068, 2011 WL 5008552, at *4 (S.D. Ohio Oct. 20, 2011. In such situations, "it is usually a sound exercise of discretion to permit the claim to be pleaded to allow the merits of the claim to be tested before the District Judge by way of a motion to dismiss." *Id.*; *see also Vanburen v. Ohio Dept. of Public Safety*, 2:11-cv-1118, at *4 (S.D. Ohio Nov. 9, 2012); *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty., Tennessee v. Momenta Pharms., Inc.*, No. 3:15-1100, 2017 WL 6381434, at *3 (M.D. Tenn. Dec. 14, 2017).

For the reasons stated, the undersigned finds Defendants have failed to demonstrate through their brief in opposition that the claims asserted against the corporate executive defendants in the Amended Complaint are futile. This finding in no way precludes them from challenging the claims by way of a dispositive motion at a later date.

### (ii) Whether Amended Complaint Fails to State Any Viable Claims

Defendants also argue broadly that the claims in the Amended Complaint are "incoherent, conclusory, and implausible," do not provide fair notice of the bases for Mr. White's claims, and do not suggest plausible claims against the proposed new defendants. (ECF Doc. 48, p. 7.) More specifically, Defendants argue: "punitive damages" is not a viable standalone claim under Ohio law; Ohio does not recognize a legal claim for "dissociation of a partner"; and the new claim for "conflict of interest" cites the ERISA statute, which is not applicable to individual life insurance policies. (*Id.* at pp. 7-8.) Mr. White requests in response that the clerk strike his "conflict of interest" claim from the proposed Second Amended Complaint. (ECF Doc. 49, p. 3.) Otherwise, he asserts that Ms. Westerfield and Mr. Malbasa

14

"committed acts of fraud" and argues that the "ends of justice are best served by allowing a full record to exist in accord with all the information in the relevant discovery." (*Id.* at p. 4.)

The undersigned does not find the new allegations in the Amended Complaint to be incoherent, conclusory, or implausible. Indeed, considering Mr. White's *pro se* status, the new factual allegations regarding agent defendants Ms. Westerfield and Mr. Malbasa are fairly clear. Mr. White alleges that he did not authorize or sign a 2009 "contract change" request that modified the terms of his life insurance policies by removing his children as beneficiaries and replacing them with his then-estranged spouse (and alleged Allstate agent) Ms. Westerfield. (ECF Doc. 42-1, pp. 9-12, § I, ¶ 2.) He attaches a copy of the 2009 paperwork, which lists Ms. Westerfield as both the new 100% beneficiary of his policies ("Ranice Westerfield-White") and as the partner agent for the policy change ("Ranice Westerfield"), despite an "Agent Report" in the same document indicating the agent was not related to the policy holder. (*Id.* at pp. 65, 69-70.) Mr. Malbasa is listed as the writing agent in the same document, with an "Agent Report" indicating he saw all proposed insureds when he took the application. (*Id.* at pp. 69-70.)

Mr. White also alleges that a written inquiry to Lincoln Benefit was forged in his name in 2011, which provided Lincoln Benefit with a purported contact address for Mr. White that was actually Ms. Westerfield's residential address. (*Id.* at pp. 14, ¶ 5; *see also id.* at p. 105.) Mr. White alleges that these fraudulent submissions prevented him from receiving correspondence regarding his policies and led to the lapse of his policies and the nonpayment of his premiums. (*Id.* at pp. 13-14, ¶¶ 4-5.)

As with their arguments as to the corporate executive defendants, Defendants have offered little by way of legal argument in support of their argument that the claims proposed in the Amended Complaint are not viable. They argue that Ohio law does not recognize punitive

damages as a "standalone claim," but do not provide authority for a finding that punitive damages are not available as a form of relief. (ECF Doc. 48, p. 8.) They argue that Ohio does not recognize the tort of "dissociation of a partner," but offer no legal authority for this contention. (*Id.*) As to their argument that claimant's reference to an ERISA statute is not supportable (*id.*), Mr. White responded by requesting that his reference to that statute be stricken from the Amended Complaint (ECF Doc. 49, p. 3).

More important to the present analysis, Defendants have not presented legal support for their general assertions that the allegations in the Amended Complaint are "incoherent, conclusory, and implausible, "to not provide Defendants with faire notice of the bases of Plaintiff's claims," and "do not suggest any plausible claims against any of the proposed defendants." (ECF Doc. 48, p. 7.) On the contrary, the specific allegations Mr. White has added regarding intentionally fraudulent actions allegedly undertaken by Ms. Westerfield and her supervisor Mr. Malbasa, both alleged to be Allstate agents and apparently acting in the course of their employment duties, appear likely to state a claim upon which relief may be granted.

In the context of Defendants' perfunctory and underdeveloped legal argument, and recognizing that Defendants remain free to challenge any legally insufficient claims through the filing of a dispositive motion, the undersigned finds Defendants have failed to demonstrate that the amendments set forth in Mr. White's Amended Complaint would be futile.

        **(iii)    Whether Claims in Amended Complaint are Time-Barred**

Defendants argue finally that the claims asserted in the Amended Complaint are time-barred because all of the alleged wrongful conduct occurred at least ten years ago. (*Id.* at pp. 8-9.) In support, they cite to Ohio cases which generally articulate the statute of limitations for claims of breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation,

conversion, and trade secret misappropriation. (*Id.* at p. 9 n. 4 (citing cases).) In response, Mr. White argues that the statute of limitations should take into account "not when the conduct occurred but [] when did the Plaintiff become aware of such conduct." (ECF Doc. 49, p. 2.)

The Sixth Circuit has recognized that a Rule 12(b)(6) motion "is generally an inappropriate vehicle for dismissing a claim based upon a statute of limitations." *Engleson v. Unum Life Ins. Co. of Am.*, 723 F.3d 611, 616 (6th Cir. 2013) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir.2012)). "It is only where the allegations in the complaint 'affirmatively show that the claim is time-barred' that dismissal on this basis on a Rule 12(b)(6) motion is appropriate." *Bailey v. Hartford Life & Accident Ins. Co.*, No. 5:15CV406, 2016 WL 760431, at *6 (N.D. Ohio Feb. 26, 2016) (quoting *Cataldo*, 676 F.3d at 547).

Here, Defendants have offered only a cursory argument that the claims asserted in the Amended Complaint are time-barred, supported simply by citations to cases that generally identify the length of the statute of limitations for various state law claims. (ECF Doc. 48, pp. 8-9.) Defendants do not respond with legal authority as to Mr. White's remaining federal claims. (*See id.*) Defendants' only discussion of the accrual or potential tolling of the various claims articulated by Mr. White is a single citation to a case holding that a cause of action generally accrues under Ohio law "when the right to prosecute it begins." (*Id.* at p. 9 n. 4 (citing *Lynch v. Dial Finance Co. of Ohio No. 1, Inc.*, 656 N.E.2d 714 (Ohio Ct. App. 1995).)

In his Amended Complaint, Mr. White alleges that he lost his life insurance benefits when two Allstate agents submitted a forged and fraudulent application in his name, which purported to change the contract terms of his policy to the direct benefit of one of those agents, and which allegedly provided both agents with a commission. (*See* Amended Complaint, pp. 9-15, 18, § 1, ¶¶ 2, 4, 5, 7, 9, 15; *see also id.* at pp. 63-97 (Ex. E).) He alleges that one of those

17

agents later submitted a forged letter in his name that purported to change the address at which he could be contacted in connection with his policies. (*Id.* at p. 14, ¶ 5.) And he alleges that the fraudulent activities of those agents kept him from receiving communications regarding his policies and resulted in the non-payment of his premiums and the lapse of his policies. (*Id.* at pp. 13-14, ¶¶ 4-5.) He also alleges that those individuals were the agents of the three corporate entity and corporate executive defendants, who conspired with, failed to supervise, turned a willful blind eye to, failed to vet and train, and refused to regulate the agent defendants. (*Id.* at pp. 11, 13-16, 18-19, § 1, ¶¶ 4, 5, 8-9, 12, 15, 17.)

Given the cursory arguments made by Defendants and the specific allegations in the Amended Complaint, the undersigned finds that the allegations of the Amended Complaint do not "affirmatively show that the claim is time barred." *Cataldo*, 676 F.3d at 547. Accordingly, the undersigned finds that Defendants have failed to establish that it would be futile to permit Mr. White to file the Amended Complaint.

**C.     Conclusion**

For all of the reasons set forth above, the undersigned finds that Mr. White's delayed request for leave to amend the Complaint was supported by good cause and that justice requires that he be granted leave to file the Amended Complaint. Accordingly, Mr. White's Motion to Amend is **GRANTED**.

The Amended Complaint now operative in this case is the version as revised by Mr. White and docketed on October 13, 2022 (ECF Doc. 46-1), as an amendment by interlineation of the version with attachments found in ECF Doc. 42-1. Accordingly, ECF Doc. 46-1 is deemed filed *instanter*. Mr. White is directed to comply with the appropriate rules for service of the Amended Complaint on all Defendants now named in this case, meaning he must serve a

Summons and the Amended Complaint on all new Defendants. Defendants are directed to respond to the Amended Complaint, with the exception of Count I, within twenty-one days of service of the Amended Complaint.

### III. Motion to Clarify and State Clear Facts.

In his Motion to Clarify, Mr. White seeks to correct certain docket entries. (ECF Doc. 39.) Namely, he states that the docket incorrectly reflects "550 Prisoner: Civil Rights" as the nature of his suit, a claim he has never alleged. (*Id.* at p. 1.) Indeed, the civil cover sheet attached to Mr. White's original Complaint (ECF Doc. 1-2, p. 1.) and the civil cover sheet attached to the Amended Complaint (ECF Doc. 42-2) both indicate that the nature of suit relates to an insurance contract dispute arising under federal question jurisdiction. Mr. White also seeks to clarify that he increased his demand value from $15,000,000.00 to $30,000,000.00 in his amended (but stricken) complaint. (ECF Doc. 39, p. 1.) His operative Amended Complaint demands $35,000,000.00. (ECF Doc. 42-2.) Defendants generally do not object to Mr. White seeking to clarify the record. (ECF Doc. 44, pp. 1-2.) However, they indicate that the nature of the motion and any request for relief was unclear. (ECF Doc. 44, pp. 1-2.)

The undersigned finds Mr. White's request to clarify the docket with respect to the nature of his suit is well-taken. His suit is not a prisoner civil rights suit. (ECF Doc. 1-2, p. 1.) The undersigned therefore ORDERS the Clerk of Courts to correct the docket to correspond with the civil cover sheet attached to Mr. White's Amended Complaint (ECF Doc. 42-2), which describes the case as an insurance contract dispute with a demand value of $35,000,000.00.

### IV. Conclusion

For the reasons set forth above, Mr. White's Motion to Amend (ECF Docs. 42, 46) is GRANTED. The undersigned also GRANTS Mr. White's request to strike Claim I (Conflict of

Interest under 29 U.S.C. § 1132(a)(1)(B)). (ECF Doc. 49, pp. 3-4.) The revisions in the document titled "Second Amended Complaint" (ECF Doc. 46-1) are deemed incorporated by interlineation into the Amended Complaint (ECF Doc. 42-1), with the exception of Claim I, which is stricken from the Amended Complaint on Mr. White's request. Mr. White is directed to comply with all applicable rules regarding service on all Defendants now named in this case. Defendants are directed to respond to the Amended Complaint, with the exception of Claim I, within twenty-one days of service.

    Mr. White's motion to clarify (ECF Doc. 39), is GRANTED. The Clerk of Courts is ORDERED to correct the docket to reflect that Mr. White has asserted an insurance contract dispute with a demand value of $35,000,000.00.

    IT IS SO ORDERED.

    Dated: January 26, 2023

                                          /s/ Amanda M. Knapp
                                          AMANDA M. KNAPP
                                          UNITED STATES MAGISTRATE JUDGE